IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL ACTION NO. _____

| | |
|---|---|
| LUXOTTICA OF AMERICA INC., ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> LISA GREENE and ASHEVILLE ) <br> VISION AND WELLNESS, O.D., ) <br> PLLC ) <br> Defendants ) <br> ) | VERIFIED COMPLAINT <br> AND <br> MOTION FOR PRELIMINARY <br> INJUNCTION |

Luxottica of America Inc. f/k/a Luxottica Retail North America Inc. ("Luxottica" or the "Company"), by and through its attorneys, complains against the above-named Defendants as follows:

## NATURE OF THE CASE

This action seeks monetary and injunctive relief against Defendants for their unlawful and anti-competitive conduct.

1. Specifically, Dr. Lisa Greene ("Greene") and Asheville Vision and Wellness, O.D., PLLC ("AVW") (collectively, "Defendants") exploited Greene's affiliation as an optometrist with Luxottica to, *inter alia*, divert business from Luxottica to themselves after having secretly started an optometry practice in direct competition with a retail location of Luxottica operated under its "LensCrafters" brand name where Greene's practice was located.

2. To accomplish this months-long diversion of business from Luxottica's LensCrafters location at 27 Schenck Parkway #140, Asheville, North Carolina 28803 (the "Office"), to her new competing optometry practice, AVW, Greene actively competed with Luxottica during the term and following the termination of the LensCrafters Doctor Affiliation Agreement, all in violation of the terms of the

contract, as described below. A true and accurate redacted copy of this LensCrafters Doctor Affiliation Agreement is attached hereto and incorporated herein as **Exhibit 1** (the "DA Agreement[1]").

3. As a result of such unlawful and anti-competitive conduct, Greene's competing optometry practice–AVW–has, upon information and belief, experienced immediate success without having invested the time, money or effort reasonably required to launch such a practice and build associated goodwill, while Luxottica's LensCrafters location has experienced a sudden decrease in business.

4. This Complaint states claims for breach of contract, unfair competition, conversion, constructive trust, and injunctive relief.

## PARTIES

5. Luxottica is an Ohio corporation authorized to do business in North Carolina, with its corporate headquarters and principal place of business located in Mason, Ohio. Luxottica is the North American retail arm of Luxottica Group[2], which is the world's largest eyewear company. "LensCrafters" is a d/b/a of Luxottica.

6. Upon information and belief, Greene is a resident of Arden, North Carolina. Greene is a former independent optometrist affiliated with Luxottica. Greene is the owner and manager of AVW. A true and accurate copy of AVW's Certificate of Assumed Business name, showing that Greene is the manager of AVW, is attached hereto and incorporated herein as **Exhibit 2**. Greene can be served at the following address: 111 Carolina Bluebird Loop, Arden, NC 28704.

7. Upon information and belief, AVW is a professional limited liability company organized and existing under the laws of the state of North Carolina with its registered office located in Arden, North Carolina. Greene is the registered agent and manager of AVW. AVW can be served through its registered agent at the following address: 111 Carolina Bluebird Loop, Arden, NC 28704.

---

[1] Plaintiff will promptly submit a Motion to Seal and Supporting Memorandum of Law, which request that the unredacted non-public version of the Doctor Affiliation Agreement be accepted and sealed by the Court.
[2] Luxottica Group is an international eyewear conglomerate that is a leader in the design, manufacture, and distribution of fashion, luxury, and sports eyewear. Luxottica operates over 3,849 corporate stores in North America, including LensCrafters and Pearle Vision.

8. Upon information and belief, Defendant Greene owns and/or controls AVW and is the person responsible for its operation and management.

9. This Court has jurisdiction over the subject matter of this action.

10. This Court has jurisdiction over the parties to this action.

11. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

### Luxottica's LensCrafters Business

12. Luxottica currently operates nine hundred seventeen (917) LensCrafters retail stores in the United States in forty-nine (49) states. LensCrafters is one of the largest optical retail brands in North America in terms of sales.

13. All LensCrafters retail stores have an experienced optometrist, either independent or employed, who focuses on building patient relationships and treating patients.

14. In locations with independent optometrists, Luxottica typically leases physical office space and equipment to the doctors referenced in the preceding paragraph to operate optometry practices at or next to Luxottica's LensCrafters retail stores under affiliation agreements.

15. The affiliation agreements that Luxottica enters with the doctors establish the nature of the parties' relationship, including the terms for the lease of the physical premises and equipment from Luxottica to the doctor.

16. Pursuant to such affiliation agreements, Luxottica provides the doctors with confidential, proprietary, and commercially valuable business information, including, *inter alia*, Luxottica's equipment, software, proprietary information (including its AccuExam Equipment), trade secrets, best practices material, and other confidential information (collectively, "Confidential Information") in exchange for the payment of rent and other facilities contributed by the doctor.

17. In addition, Luxottica invests considerable time and resources promoting and advertising its LensCrafters retail stores, including the promotion and advertisement of the doctors at each location, to increase the market presence for the

doctors to build goodwill, which is key to Luxottica's operations and continued growth.

18. Luxottica, therefore, requires the doctors, among other things, to provide, *inter alia*, confidentiality and non-compete covenants, as historically set forth in the DA Agreement, before Luxottica will share information regarding its unique business model with the doctor. These covenants are necessary for Luxottica to safely share confidential, proprietary, and commercially valuable business information with its doctors.

Greene's DA Agreement

19. On or about October 29, 2015, Greene entered into the DA Agreement with Luxottica to sublease the office space at LensCrafters and operate her independent optometry practice next to Luxottica's retail store. *See* Ex. 1.

20. The initial term of the DA Agreement was from January 1, 2016 through December 31, 2020, however, the DA Agreement was amended under a Second Amendment to Sublease Agreement (the "Amendment") on January 1, 2021, to extend its term until December 31, 2021. The Amendment also added a provision that allowed either party to terminate the DA Agreement upon providing the other party with sixty (60) days' notice. A true and accurate copy of the Second Amendment to Sublease Agreement is attached hereto and incorporated herein as **Exhibit 3**.

21. Pursuant to the DA Agreement, Luxottica leased Greene certain equipment, instruments, and furniture, as provided by Schedule A of the DA Agreement, to operate her optometry practice next to the LensCrafters store.

22. Using Luxottica's Confidential Information, Greene offered optometry services in the city of Asheville and gained access to Luxottica's loyal customer base and goodwill.

23. Greene performed the services under the DA Agreement at a LensCrafters store located at Biltmore Park Town Square, 27 Schenk Parkway #140, Asheville NC 28803.

24. In order to protect its Confidential Information and goodwill, the DA Agreement signed by Greene, contains confidentiality and non-compete provisions.

25. On January 5, 2021, Greene provided sixty (60) days' written notice of her intent to terminate the DA Agreement effective on March 31, 2021. Greene terminated her affiliation with Luxottica on March 31, 2021. A true and accurate copy of that correspondence is attached hereto and incorporated herein as **Exhibit 4**.

## Competition & Default

26. Upon information and belief, prior to the termination of the DA Agreement, Greene was already secretly competing against Luxottica, both individually and/or as AVW's corporate promoter, by working to build and open a new facility for AVW's operations and informing current patients of LensCrafters that they could purchase their eyewear and receive the services provided by Greene at LensCrafters at AVW's new location at 559 Long Shoals Rd, Arden, North Carolina 28704 ("AVW's Premises"). At the time, AVW's Premises was set to open in the middle of April 2021.

27. The AVW Premises is located within a 3-mile radius of Biltmore Park Town Square, 27 Schenk Parkway #140, Asheville NC 28803.

28. Upon information and belief, AVW submitted Articles of Organization to the North Carolina Secretary of State, which became effective on or about April 8, 2020, to form a professional limited liability company "to engage in the practice of optometry through its employees and members."

29. Upon information and belief, Greene was an organizer and initial registered agent of AVW.

30. Upon information and belief, Greene directed and/or caused a sign advertising the opening of AVW to be erected as early as January 29, 2021 (approximately two (2) months prior to the termination of the DA Agreement on March 31, 2021).

31. Defendant AVW advertises on its website that it "wants to be your trusted optometrist" and "our eye doctors are trained to provide our patients with a

wide variety of eye care including comprehensive eye examinations, contact lens and medical eye evaluations."[3]

32. The aforementioned conduct by Greene was in direct violation of the DA Agreement, specifically, the in-term, non-competition provision of Section 16(A)(4), that provides in part:

A. *Business During Term:*

*(4) Doctor shall not directly or indirectly practice optometry, sell prescription eyewear including eyeglasses and contact lenses, or manage, operate, own, control, act as consultant to **or otherwise be connected with,** or be employed by an optometric practice or dispensing optical store other than as expressly permitted in this Agreement.*

(Emphasis added).

33. Prior to the termination of the DA Agreement, on March 11, 2021, Luxottica informed Greene in writing, through its Associate General Counsel, Michael Mott ("Mr. Mott"), that she was in violation of Section 16(A)(4)'s non-competition provision and therefore, that she was in breach of the DA Agreement.

34. Upon information and belief, however, Greene failed to cure her default and continued to compete against Luxottica by advertising and promoting AVW during the remaining term of the DA Agreement, resulting in default pursuant to Section 19(A)(17) and causing immediate and irreparable injury to Luxottica.

35. In addition to the in-term, non-competition provision, the DA Agreement contained a post-termination, non-competition provision that was reasonable in scope, duration, and geographic location.

36. Pursuant to Section 16(C)(1)(c) of the DA Agreement, Greene agreed and acknowledged, in pertinent part, that:

*For **one year** after this Agreement terminates, Doctor shall not directly or indirectly engage in, become employed by, operate, own, manage, control, consult with respect to, or otherwise be connected with any optometric practice or any other business that engages in, or is connected in any manner with, the operation of an optical business selling optical frames and lenses, including contact lenses, or any other business that engages in, or is connected in any manner with, the operation of an*

---

[3] https://ashevillevisionandwellness.com/

*optical business selling optical frames and lenses, including contact lenses, located **within a three (3)-mile radius of the Office** in the event this Agreement terminates because of . . . [various factors tied to the Doctor's action, including 'Doctor has an uncured Default at expiration'].*

(Emphasis added).

37. As stated above, prior to and following termination of the DA Agreement, Greene continued her efforts to open AVW. AVW's Premises is within 3 miles of the LensCrafters where her practice was located, in violation of Section 16(C) of the DA Agreement.

38. At termination of the DA Agreement, Greene had an uncured default under the DA Agreement.

39. On March 11, 2021, Mr. Mott also sent correspondence to Greene informing her that advertisement and the location of AVW's Premises was in violation of the non-competition provision under Section 16(C) of the DA Agreement, and requested that Greene "immediately cease and desist from promoting and affiliating [herself] with the new practice . . . within a three mile radius of [her] current LensCrafters location for one year after termination of [the DA Agreement]." A true and accurate copy of that correspondence is attached hereto and incorporated herein as **Exhibit 5**.

40. Upon information and belief, however, Greene failed to cease and desist her advertisement of the AVW practice and is currently operating and/or preparing to operate an optometry practice at AVW's Premises and selling optical frames and lenses, including eyewear manufactured by Luxottica (e.g., Oakley and Ray-Ban products) and contact lenses[4], resulting in default pursuant to Section 19(C) and causing immediate and irreparable injury to Luxottica.

## Count I
*(Breach of Contract – Greene)*

41. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

---

[4] See: https://ashevillevisionandwellness.com/products/eye-glasses

42. Greene was an independent optometrist and subject to the terms set forth in the DA Agreement.

43. Pursuant to that DA Agreement, Greene agreed and acknowledged, in pertinent part, that:

a. She would not "directly or indirectly practice optometry, sell prescription eyewear including eyeglasses and contact lenses, or manage, operate, own, control, act as consultant to or otherwise be connected with, or be employed by an optometric practice" during the term of the DA Agreement;

b. She would not "directly or indirectly engage in, become employed by, operate, own, manage, control, consult with respect to, or otherwise be connected with any optometric practice or any other business that engages in, or is connected in any manner with, the operation of an optical business selling optical frames and lenses, including contact lenses,. . . within a three (3)-mile radius of the Office" for a period of one (1) year following termination of the DA Agreement;

c. Any breach or violation of the non-competition covenants in Section 16 of the DA Agreement would cause immediate and irreparable injury to Luxottica;

d. Luxottica would be entitled to equitable remedies and injunctions both preliminary and temporary, in the event of any breach or violation of the non-competition covenants in Section 16 of the DA Agreement, along with all other legal remedies;

e. It was reasonable and necessary for the protection of Luxottica's goodwill and business for Greene to make the non-competition covenants contained in Section 16 of the DA Agreement; and,

f. She pay Luxottica a sum of Eighty Thousand and No/100 Dollars ($80,000.00), as liquidated damages, for any breach or violation of Section 16 of the DA Agreement, including reasonable attorney's fees and costs incurred, and Luxottica's enforcement of the same.

44. After executing the DA Agreement, Greene received and benefited from Luxottica's above-discussed customer base, goodwill, and Confidential Information.

Luxottica would not have provided such information without Greene having first signed the DA Agreement.

45. The DA Agreement is a valid, binding, and enforceable contract between Luxottica and Greene.

46. Luxottica provided consideration to Greene for these covenants.

47. The optometrists affiliated with Luxottica provide optometry services to customers in the community and neighborhoods in and around the neighborhoods of AVW's Premises in Arden and/or are located within the three (3) mile radius around the LensCrafters where Greene's practice was located. In addition, LensCrafters sells optical frames and lenses to customers in these areas.

48. Greene's above-identified non-competition covenants with Luxottica protects Luxottica's legitimate and important business interests, including Luxottica's goodwill, Confidential Information, and its business and competitive interests in the marketplace.

49. Greene breached the DA Agreement by promoting, advertising, and operating a competing optometry practice and optical business in violation of the DA Agreement's non-competition covenants.

50. Upon information and belief, Greene breached the DA Agreement by attempting to take or taking Luxottica's customers from its LensCrafters location during the term of the DA Agreement.

51. Upon information and belief, Greene breached the DA Agreement by taking and using, without Luxottica's authorization, Luxottica's Confidential Information for Defendants' use and benefit in furtherance of advertising, promoting, and operating an optometry practice and optical business that competes directly with LensCrafters.

52. Upon information and belief, Greene breached the DA Agreement by distributing, selling, assigning, or offering for sale or distribution, or otherwise transferring (i) any listing of Greene's patients or (ii) the patient records used by Greene at Biltmore Park Town Square, 27 Schenk Parkway #140, Asheville NC 28803, the location where Greene worked when affiliated with LensCrafters, to an

optometrist, optical dispenser, or other competitor of Luxottica who would use such listing at or from a location within 10 miles of Biltmore Park Town Square, 27 Schenk Parkway #140, Asheville NC 28803.

53. On March 31, 2021, counsel for Defendant Greene wrote to Plaintiff and stated that Defendant Greene would be taking all patient records to her new practice (AVW). A true and accurate copy of that correspondence is attached hereto and incorporated herein as **Exhibit 6**.

54. As a direct and proximate result of these actions, Luxottica is entitled to monetary damages in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) and the injunctive relief prayed for below.

## Count II
(*Tortious Interference with Contractual and Prospective Contractual Relations-AVW*)

55. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

56. AVW was aware of Greene's contract with Luxottica and was aware that the contract contained restrictive covenants. Despite this knowledge, AVW allowed and encouraged Greene to breach her contract with Luxottica. AVW has interfered with Luxottica's contract with Greene, caused and contributed to Greene's breaches of that contract, and it has benefited from Greene's breaches.

57. Because of AVW's wrongful acts, Luxottica has lost and will lose business opportunities and the benefit of client and prospective client relationships and goodwill developed at Luxottica's expense.

58. AVW's actions have caused, and will continue to cause, Luxottica immediate and irreparable harm.

59. Luxottica has no adequate remedy at law.

60. Luxottica is therefore entitled to a preliminary injunctive relief, actual damages, compensatory damages, and punitive damages.

## Count III
(*Unfair and Deceptive Trade Practices – All Defendants*)

61. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

62. Pursuant to N.C. Gen. Stat. § 75-1.1, Defendants' conduct, as set forth in this Complaint, constitutes unfair methods of competition and unfair or deceptive acts or practices in and affecting commerce, which have and will injure Luxottica.

63. Defendants' conduct as set forth in this Complaint possessed the tendency or capacity to mislead, and created the likelihood of deception.

64. As a proximate result of Defendants' unfair or deceptive competitive conduct in and affecting commerce, Luxottica has suffered actual injury and is entitled to recover compensatory damages against Defendants, jointly and severally, in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

65. Luxottica is entitled to recover against Defendants, jointly and severally, treble its compensatory damages pursuant to N.C. Gen. Stat. § 75-16.

66. Luxottica is entitled to recover its costs and attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1, in that Defendants' conduct was willful and due to their unwarranted refusal to fully resolve the matter prior to litigation.

### Count IV
(*Conversion/Misappropriation – All Defendants*)

67. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

68. Defendants misappropriated economic opportunities belonging to Luxottica through their diversion of customers from Luxottica's LensCrafters to their competing optometry practice and optical business at AVW.

69. Because of these and other actions, Defendants have converted the property, assets, and business opportunities of Luxottica to their own use.

70. Before these and other actions, Luxottica was the sole and rightful owner of the property, and assets, and/or the vested expectation of the same.

71. Luxottica would have received these property, assets and opportunities but for Defendants' conversion and misappropriation.

72. As a direct and proximate result of Defendants' actions, Luxottica has suffered and will suffer economic loss and damage.

73. Luxottica is entitled to judgment against Defendants, jointly and severally, for compensatory and punitive damages arising from their conversion and misappropriation of Luxottica's assets, funds, property and business opportunities in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) and to be proven, plus pre-and post-judgment interest, costs and attorneys' fees as allowed by law.

## Count V
(*Constructive Trust – All Defendants*)

74. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

75. Defendants improperly and unjustly came into possession or control of the property, assets, funds, and business opportunities of Luxottica by conspiring to use Greene's position as an independent optometrist.

76. Greene, secretly acting as a competitor in concert with and/or under the guise of, AVW, came into possession or control of Luxottica's assets, property, funds and business opportunities by intentionally breaching the DA Agreement.

77. Defendants would be unjustly enriched if they were permitted to retain possession or control of the assets, funds, property and business opportunities appropriated while Greene was secretly competing with Luxottica.

78. Defendants' wrongful possession and control of Luxottica's assets, funds, property, and business opportunities has deprived Luxottica of a beneficial interest in those assets, funds, property, and business opportunities to which it is entitled.

79. Equity requires the imposition of a constructive trust on Defendants' assets which were acquired through their wrongful conduct alleged herein, including, not limited to, any proceeds from customers' eye examinations and eyewear sales from AVW's operation of the optometry practice. The constructive trust is required to prevent Defendants from being unjustly enriched by their unfair, anti-competitive and unlawful conduct.

80. Luxottica is entitled to a constructive trust or equitable lien on all assets of Defendants generated by their diversion and misappropriation of Luxottica's assets, funds, property, and business opportunities.

## Count VI
(*Accounting – All Defendants*)

81. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

82. Under the DA Agreement, Greene owed a duty to Luxottica to promote its interests and not to secretly compete with it.

83. Greene abused her position and breached this duty to Luxottica by misappropriating, diverting, and/or destroying assets and property and interests of Luxottica, as fully set forth above and while acting in concert with and/or under the guise of AVW.

84. Luxottica is entitled to a full, complete and proper accounting of the funds, interests, and opportunities that Defendants diverted for their own use.

## Count VII
(*Punitive Damages – All Defendants*)

85. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

86. As set forth fully above, Defendants acted intentionally, willfully, wantonly, and in reckless disregard of Luxottica's rights, for the purpose of personal gain and to Luxottica's detriment.

87. These actions warrant the imposition of punitive damages against Defendants and Luxottica is entitled to have and recover an award of punitive damages in any amount which this Court deems just and proper.

## APPLICATION AND MOTION FOR PRELIMINARY INJUNCTION
(*All Defendants*)

88. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

89. In violation of the DA Agreement, Greene is employed by, operating, owning, managing, controlling, and otherwise connected with an optometric practice or other business that is connected in any manner with, the operation of an optical business selling optical frames and lenses, including contact lenses, or other business that is engaged in or connected in any manner with the operation of an optical business selling optical frames or lenses within a three (3)-mile radius of the Office.

90. The competitive business referenced in the foregoing paragraph is AVW.

91. Plaintiff's injury is irreparable in that Plaintiff may forever lose its competitive business advantage, goodwill, and customers as a result of Defendants' actions.

92. Pursuant to Rule 65(a) of the Federal Rules of Civil, Luxottica is entitled to and moves the Court for preliminary injunctive relief prohibiting Greene and AVW, their agents and those persons in active concert or participation with them, from: (i) violating Greene's non-competition covenants, and confidentiality obligation, including from conducting, operating, or otherwise participating in the practice of optometry or any other business that engages in, or is connected in any manner with, the operation of an optical business selling optical frames and lenses, including contact lenses within a three (3) mile radius of Luxottica's *LensCrafters* location, as provided by Section 16(C) of the DA Agreement; (ii) destroying, removing, transferring, or altering any documents or tangible things, including computer files and other electronic data, which is relevant to the subject matter of this Complaint; (iii) transferring or disposing of any funds, assets, or property, whether tangible or intangible, belonging to Luxottica under law or equity, which Defendants unlawfully diverted from Luxottica; and (iv) transferring any listing of Greene's patients or the patient records used by Greene at Biltmore Park Town Square, 27 Schenk Parkway #140, Asheville NC 28803 (the "Patient Files") to any optometrist, optical dispenser or similar competitor of Luxottica, who would use such listing at or from a location within ten (10) miles of Biltmore Park Town Square, 27 Schenk Parkway #140, Asheville NC 28803.

93. By virtue of the foregoing, Luxottica has demonstrated a likelihood of success on the merits, and that a balancing of the equities favors the issuance of an injunction against Defendants.

94. Luxottica will be irreparably harmed if Defendants are not preliminarily enjoined from competing in violation of the requirements for the covenants not to compete, continuing to engage in and/or benefit from the unfair and anti-competitive conduct identified in this Complaint, destroying documents or tangible things relevant to the subject matter of this action, and utilizing funds to which Luxottica was entitled.

95. Luxottica has no adequate remedy at law and a preliminary injunction is necessary to preserve its rights and the status quo during the pendency of this action.

## **DEMAND FOR JURY TRIAL**

Luxottica respectfully demands a trial by jury on all issues so triable arising out of this action.

WHEREFORE, Luxottica respectfully requests that the Court grant the following relief as to each and every separate count set forth above:

1. For an award against Greene for compensatory and liquidated damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) to compensate Luxottica for injury resulting from her breach of contract.

2. For an award against all Defendants, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) to compensate Luxottica for injury resulting from Defendants' unfair and anti-competitive trade practices, and for treble damages pursuant to N.C. Gen. Stat. § 75-1.1, *et seq*.

3. For an award against all Defendants, jointly and severally, for punitive damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), which is appropriate to vindicate the public interest in making an example of them and in deterring similar wrongful acts.

4. For an award against all Defendants, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) to compensate Luxottica for injury resulting from their conversion/misappropriation of Luxottica's expected economic advantage and opportunities.

5. That a constructive trust for the benefit of Luxottica be imposed upon those assets or funds owned, controlled by, or in the custody of Defendants that were procured from Luxottica or for Luxottica's benefit, including, but not limited to, proceeds and property associated with AVW's optometry practice, including the sale of optical frames and lenses, including contact lenses.

6. That the Court order a full, complete and proper accounting of the opportunities and funds that Defendants diverted from Luxottica.

7. That the Court enter a Preliminary Injunction enjoining Defendants, their agents and those persons in active concert or participation with them, from: (i) further violating Greene's non-competition covenants, and confidentiality obligation;

8. Specifically, Plaintiff asks the Court to:

    a. Enjoin Defendant Greene from being employed by operating, owning, managing, controlling, consulting with respect to, or otherwise being connected in any manner with, the operation of conducting, operating, or otherwise participating, through Defendant AVW or otherwise, in the practice of optometry or any other business that engages in, or is connected in any manner with, the operation of an optical business selling optical frames and lenses, including contact lenses within a three (3) mile radius of Luxottica's LensCrafters location at Biltmore Park Town Square, 27 Schenk Parkway #140, Asheville NC 28803, as provided by Section 16(C)(1) of the DA Agreement for one year following the termination of the DA Agreement;

    b. Enjoin Greene from distributing, selling, assigning, or offering for sale or distribution, or otherwise transferring: (i) any listing of Defendant Greene's patients; or (ii) the patient records used by Defendant Greene at Biltmore

Park Town Square, 27 Schenk Parkway #140, Asheville NC 28803, except as required by law or requested by individual patients, to any optometrist, optical dispenser, or other competitor of Plaintiff, including but not limited to Defendant AVW, who would use such listing at or from a location within ten (10) miles of Biltmore Park Town Square, 27 Schenk Parkway #140, Asheville NC 28803 as provided by Section 16(C)(4) of the DA Agreement for one year following the termination of the DA Agreement;

    c. Enjoin AVW from using (i) any listing of Defendant Greene's patients; or (ii) the patient records used by Defendant Greene at Biltmore Park Town Square, 27 Schenk Parkway #140, Asheville NC 28803, except as required by law or requested by individual patients; and

    d. Enjoin Defendants from transferring or disposing of any funds, assets, or property, whether tangible or intangible, belonging to Plaintiff under law or equity, which Defendants unlawfully diverted from Plaintiff.

9. For a permanent injunction enjoining all Defendants from using Luxottica's Confidential Information, engaging in unfair and anti-competitive conduct, and otherwise unjustly benefiting from Defendants' illegal diversion of Luxottica's optometry services and profits therefrom and for a permanent injunction further enjoining Greene from transferring the Patient Files to any optometrist, optical dispenser, or other competitor of Luxottica who would use such listing at or from a location within 10 (miles) of 27 Schenk Parkway, Unit #104 Asheville, NC 28803 on or before March 31, 2022.

10. For a preliminary and permanent injunction enjoining AVW from tortiously interfering with and encouraging the breach of the DA Agreement by Greene.

11. That the cost of this action, including reasonable attorney's fees, be taxed to Defendants, jointly and severally, as allowed by law; and

12. Such other and further relief as this Court may deem just and proper.

Respectfully submitted, this the 20th day of July, 2021.

/s/ Hayley R. Wells
Hayley R. Wells
N.C. State Bar I.D. No.: 38465
email: docket@wardandsmith.com*
email: hrw@wardandsmith.com**
Xavier D. Lightfoot
N.C. State Bar I.D. No.: 54900
email: xdlightfoot@wardandsmith.com**
For the firm of
Ward and Smith, P.A.
Post Office Box 2020
Asheville, NC 28802-2020
Telephone: 828.348.6070
Facsimile: 828.348.6077
Attorneys for Plaintiff
Luxottica of America Inc.

*This email address must be used in order to effectuate service under Rule 5 of the Federal Rules of Civil Procedure.

**Email address to be used for all communications other than service.

# VERIFICATION

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

LORI JONES, being duly sworn, deposes and says that she is Senior Regional Manager – LensCrafters for LUXOTTICA OF AMERICA INC., and as such is authorized to make this verification; that she has read the foregoing VERIFIED COMPLAINT AND MOTION FOR PRELIMINARY INJUNCTION (the "Complaint"), that some of the statements within the Complaint are not within her personal knowledge, that the facts and information have been compiled by authorized representatives of Luxottica of America Inc. and counsel, and/or upon her investigation and she relies upon them for their completeness, truth and accuracy and/or upon her investigation, and upon that basis the same is true of her own knowledge, except as to those matters and things stated on information and belief, and, as to those, she believes them to be true.

_____
Lori Jones

Mecklenburg COUNTY, NC STATE

Sworn to (or affirmed) and subscribed before me this day by LORI JONES.

Date 07/20/2021

_____
Signature of Notary Public

My commission expires: 01/10/2024

(Official Seal)

DANIEL PIURKOWSKY
Notary Public
Cabarrus County, North Carolina
My Commission Exp. Jan 10, 2024

ND: 4838-7719-1409, v. 2