# EXHIBIT "1"
# (Redacted Version)

# LENSCRAFTERS DOCTOR AFFILIATION AGREEMENT

This AGREEMENT is between Luxottica Retail North America Inc., an Ohio corporation, its successors and assigns ("Sublessor"), with its business address at 4000 Luxottica Place, Mason, Ohio 45040-8114, and the optometrist identified on the attached Schedule I (the "Doctor").

## 1. DEFINITIONS

A.

B.  The "Premises" means the space leased to Sublessor under the Base Lease Agreement.

C.

D.  The "Office" means that portion of the Premises delineated on the attached plan drawing (Schedule "B"), which is incorporated into this Agreement.

E.

F.

G.

H.

I.

J.

K.

L.

M.

## 2. GRANT; TERM

### A. Grant

1. Sublessor subleases the Office to Doctor for the term of this Agreement as set forth below. Doctor agrees to sublease the Office in accordance with and subject to the terms, conditions, and covenants contained in this Agreement and the Base Lease Agreement.

2. Sublessor leases the Equipment and all or any additional Equipment added at a later date to Doctor pursuant to the terms of this Agreement.

### B. Term

1. The term of this Agreement is listed in the attached Schedule I.

2. This Agreement shall not extend beyond the term of the Base Lease Agreement. If the Base Lease Agreement(s) terminates for any reason or Sublessor ceases to operate at any Premises, this Agreement automatically terminates on the date selected by Sublessor in its sole discretion, but Sublessor agrees that the date shall not be more than 30 calendar days before the cessation of operation at the Premises.

C.



D.

E.

## 3. USE

Doctor agrees to use the Office only for the practice of optometry including conducting eye examinations, using pharmaceuticals as permitted by law and Doctor's specific certification, and fitting and retailing contact lenses, solutions and contact lens related accessories.

Doctor shall not use the Office for any purposes other than described above. Doctor shall not use the Office: (i) to sell, dispense or fit eyeglass frames, eyeglass lenses, eyeglass accessories or sunglasses; (ii) in any way that could adversely affect Sublessor's use of the Premises as an eye care/eye wear center; or (iii) in any way

which would increase the existing rate of insurance upon the Office or the Premises or cause cancellation of such insurance.

4.

5.

3





6.





## 7. ADVERTISING/MARKETING

A. Doctor acknowledges that Sublessor includes from time to time in its advertising, reference to the types of services and products that may be provided at doctors' offices next to Sublessor. Doctor agrees to cooperate fully with Sublessor in the design, layout and content of such advertising as permitted by state law. Since advertising is arranged or ordered several months in advance of distribution or publication, Doctor acknowledges that Doctor's name may appear in advertising after the termination of this Agreement. Doctor agrees that any advertisement that is ordered before the effective date of the termination of this Agreement will not be the basis of any claim or cause of action against Sublessor and cannot and will not be the cause of any damages to Doctor.

8.

2. Must legally discard all patient information/data collected through The Appointment Book if the doctor ends their affiliation with Sublessor. Doctor will be given the option to print or download their patient records prior to lease termination or alternatively to request a file of their patient records from an outside vendor for a fee.

F.

G. If Sublessor leases equipment that may record or retain "protected health information" and/or "electronic protected health information" regarding Doctor's patients (collectively "PHI"), the parties agree that such information belongs to Doctor. At lease termination, Doctor has an obligation to download and dispose of such PHI appropriately. If Doctor does not download or dispose of such information, Doctor hereby authorizes Sublessor to discard all patient information/data collected through or on such equipment.

H.

I.

J.

K.

L.

9.



## 10. FREEDOM OF DOCTOR'S PROFESSIONAL JUDGMENT

Sublessor shall not interfere with or attempt to control the professional judgment of Doctor or any optometrists or other licensed professionals employed by or associated with Doctor. Sublessor will not dictate or attempt to control Doctor's fees for services provided or product sold at the Office. Doctor acknowledges that Doctor maintains and is in full control of all aspects of and exercises unfettered independent professional judgment regarding the practice of optometry at the Office.

11.



LENSCRAFTERS ADV   APF 2018 - Lisa Greene, O.D. (976)   9



14.

15.

LENSCRAFTERS

## 16. MANAGEMENT OF BUSINESS; CONFIDENTIAL PROPRIETARY INFORMATION; NON-COMPETITION

A. <u>Business During Term</u>:

Doctor and Sublessor agree that, because managing an optometric practice is inherently demanding, during the term of this Agreement:

1. Doctor will be actively involved in the day-to-day management and operation of each Office and accessible to Sublessor's field and store management to discuss issues related to the operations of the Office;

2. Sublessor's field and store management will be accessible to Doctor to discuss issues related to the operations of the Office;

3. In the event that an issue is not resolved between the Sublessor's field and store management and Doctor, Doctor should refer to the Communication Protocol on www.doctorsatluxottica.com.

4. Doctor shall not directly or indirectly practice optometry, sell prescription eyewear including eyeglasses and contact lenses, or manage, operate, own, control, act as consultant to or otherwise be connected with, or be employed by an optometric practice or dispensing optical store other than as expressly permitted in this Agreement. With the prior consent of Sublessor, which shall not be unreasonably withheld or delayed, Doctor may provide occasional vacation or illness coverage in other optometry practices that provide similar coverage to Doctor.

B. <u>Confidentiality</u>:

1. <u>Confidential Information</u>:

Doctor may be entrusted with or may obtain access to confidential and proprietary information about Sublessor, its management, business plans, practices and policies including Sublessor, this Agreement, trade secrets, customers, and other information considered confidential and proprietary by Sublessor. Doctor will receive various training and "best practices" materials from Sublessor from time to time. Doctor acknowledges the value and unique nature of these materials in aiding in the development of Doctor's practice. Doctor agrees that the secrecy of this information and these materials is of value to Sublessor business. Furthermore, Doctor agrees to return all such materials and copies, whether authorized or not, by termination of this Agreement.

2. <u>Non-disclosure of Confidential Information</u>:

a. During or after the term of this Agreement, Doctor shall not for any reason whatsoever, either directly or indirectly, communicate or divulge to any other person or entity or use for the benefit of Doctor or any other person or entity, any of Sublessor's trade secrets, confidential information, or other proprietary information, including but not limited to the items described in Section 16 B(1) or information of any kind or nature pertaining to the business, practices, or policies of Sublessor's business, without the express written consent of Sublessor.

b. (b) Doctor shall maintain the confidentiality of this Agreement and shall not, without Sublessor's written consent, provide a copy of nor discuss or reveal its terms or conditions to any third party excluding Doctor's and Sublessor's attorneys, outside auditors or accountants or pursuant to a lawful subpoena or demand by a governmental agency. Doctor agrees to provide Sublessor with notice of receipt of a subpoena or demand immediately upon service and to use best efforts to provide Sublessor with an opportunity to quash the subpoena. Sublessor agrees to maintain the confidentiality of this Agreement with Doctor and shall not discuss or reveal its terms or conditions to any third party, excluding Doctor's and Sublessor attorneys, outside auditors or accountants or pursuant to a lawful subpoena or demand by a government agency.

3. <u>Business Associate Agreement</u>:

The parties agree to the terms and conditions in the attached Schedule G, HIPAA Privacy Business Associate Agreement.

C. <u>Non-competition Following Termination</u>:

1. For one year after this Agreement terminates, Doctor shall not directly or indirectly engage in, become employed by, operate, own, manage, control, consult with respect to, or otherwise be connected with any optometric practice or any other business that engages in, or is connected in any manner with, the operation of an optical business selling optical frames and lenses, including contact lenses, or any other business that engages in, or is connected in any manner with, the

operation of an optical business selling optical frames and lenses, including contact lenses, located within a three (3)-mile radius of the Office in the event this Agreement terminates because of:

    a) Doctor's default;

    b) Doctor's election not to renew under Section 2E of this Agreement, including Doctor's decision not to execute Sublessor's then current form of Affiliation Agreement;

    c) Doctor has an uncured default at expiration;

    d) Sublessor's election not to renew under Section 2E of this Agreement and Doctor has written notice of 3 or more defaults (even though cured) during the 36 months immediately preceding Sublessor's notice date to Doctor as set forth in Section 2E;

    e) In the event of a sale or transfer of business;

    f) Sublessor or Doctor exercises its rights to terminate this Agreement pursuant to Section 2 (D) <u>Mutual Option to Terminate Based on Patient Satisfaction</u> of this Agreement.

2. For one year after this Agreement terminates, Doctor shall not directly or indirectly engage in, become employed by, operate, own, manage, control, consult with respect to, or otherwise be connected with any optometric practice or any other business that engages in, or is connected in any manner with, the operation of an optical business selling optical frames and lenses, including contact lenses, or any other business that engages in, or is connected in any manner with, the operation of an optical business selling optical frames and lenses, including contact lenses, located within a one-half (1/2) -mile radius of the Office in the event this Agreement terminates because Sublessor elects not to renew under Section 2E of this Agreement.

3. Doctor shall not, during or after the term of this Agreement, distribute, sell or offer for sale or distribution any listing of Sublessor's customers who are not patients of Doctor.

4. Doctor agrees not to, either directly or indirectly, during the term of this Agreement or within one year of the termination of this Agreement, distribute, sell, assign or offer for sale or distribution, or otherwise transfer (i) any listing of Doctor's patients or (ii) the patient records used by Doctor at the Office, except as required by law or requested by individual patients, to any optometrist, optical dispenser, or other competitor of Sublessor who would use such listing at or from a location within ten (10) miles of the Office.

D. Doctor agrees that it is reasonable and necessary for the protection of the goodwill and business of Sublessor that Doctor make the covenants contained in this Section 16 about Doctor's conduct during and after the term of this Agreement and that Sublessor will suffer irreparable injury if Doctor engages in the prohibited conduct. Doctor has thoroughly reviewed the terms of these covenants, including the time periods, and Doctor's experience and/or abilities are such that observing such covenants shall not cause Doctor undue hardship nor shall it unreasonably interfere with Doctor's ability to earn a livelihood. The covenants are each separate obligations independent of any other provisions of this Agreement, and the existence of any claim or cause of action of Doctor against Sublessor is not a defense to the enforcement by Sublessor of any such covenants.

E. The parties agree that the actual damages which flow from a breach by Doctor of the Non-Competition provisions stated in Section 16 C(1) and (2) of this Agreement will be difficult to ascertain and prove. In order to avoid cost and uncertainty of arbitration to attempt to determine the amount of such actual damages, the parties agree upon the sum of $80,000.00 per Office as liquidated damages. The parties further agree that such amount is not intended to be a penalty, but rather is intended to, and does, bear a reasonable relationship to the actual damages which may be anticipated to flow from a breach by Doctor of Section 16C of this Agreement. Both parties understand and agree to accept the risk that the agreed-upon amount of liquidated damages may be higher or lower than the actual damages which might have been determined through arbitration.

If Doctor breaches Section 16C(1) or (2) and pays said $80,000.00 in liquidated damages, upon receipt of such payment, Sublessor shall waive its right to injunctive relief for such breach, but such waiver shall not limit Sublessor's ability to collect any indebtedness due Sublessor, or to seek damages for the breach of any other provision of this Agreement.

F. The restrictions contained in this Section 16 shall apply only for such time period, and to such capacities, functions, operations, areas, services, and products as are reasonably necessary for the protection of Sublessor and shall be construed as divisible and enforceable on that basis.

17.

18.

## 19. DEFAULT/TERMINATION

A. The occurrence of any one or more of the following events shall constitute an "Event of Default" by Doctor and shall give rise to Sublessor remedies set forth in Paragraph (B) below if:

1.

2.

3.

4.

5.

6.



7. Doctor defaults in the performance of any term or condition of the Base Lease Agreement which calls for automatic termination upon default;

8. Doctor defaults in the performance of any of the terms and conditions under this or any other written Agreement between the parties, on three (3) separate occasions during any consecutive 36 months even though the defaults have been cured;

9.

10.

11.

12.

13.

14.

15.

16. ████████████████████████████████████████

17. Doctor fails to keep or observe any other covenant, representation, or warranty of this Agreement not specifically stated in this Section 19A, the Base Lease, or any other written Agreement between the parties, including any parent, subsidiary or affiliated corporations, and fails to cure or diligently commence to cure such omission within 10 days after Doctor receives written notice of the default.

18. ████████████████████████████████████████

The notice and cure periods provided herein are in lieu of, and not in addition to, any notice or cure periods provided by law.

B. If an Event of Default occurs, Sublessor shall have the rights and remedies hereinafter set forth to the extent permitted by law, which shall be distinct, separate and cumulative with and in addition to any other right or remedy allowed under any law, in equity or other provisions of this Agreement:

1. Re-enter the Office, and possess it, including all improvements, fixtures and appurtenances, as if this Agreement had not been made, and, at Sublessor election, store any property therein in a public warehouse or elsewhere at the cost of, and for the account of, Doctor, all without service of any notice of intention to re-enter and with or without resort to legal process (which Doctor hereby expressly waives) and without Sublessor being deemed guilty of trespass or becoming liable for any loss or damage which may be occasioned thereby;

2. Terminate all obligations on the part of Sublessor under this Agreement;

3. Maintain an action for arrears of Rent, Facilities and AccuExam Program Fee or breach of covenant, present and prospective damages, or for any other cost or expense resulting from Doctor's breach. The commencement of a proceeding or suit in forcible entry and detainer or in ejectment or otherwise is equivalent in every respect to actual entry by Sublessor;

4. Relet the Office or any portion of it for whatever term or terms (which may be for a term extending beyond the Term) for whatever rent obtainable, and may recover from Doctor any deficiency between the amount so obtained and Rent and Facilities Contribution provided for in this Agreement as well as reimbursement for any reasonable costs of reletting, including but not limited to brokerage fees, attorneys' fees, and any alterations or repairs as may be necessary to relet the Office. The reletting of the Office under such circumstances by Sublessor does not under any circumstance mean that Sublessor elects to terminate the Agreement or accepts Doctor's surrender of the Office, unless Sublessor consents to either in writing. If Sublessor relets without terminating the Agreement, it may at any time thereafter terminate this Agreement.

5. Upon termination of this Agreement for an Event of Default, demand immediate payment of all money Doctor owes Sublessor including, but not limited to, all Rent, Facilities and AccuExam Program Fees reserved under the Agreement for the remainder of the Term (but for the termination) which shall be accelerated and become immediately due and payable; and

6. Pursue any other rights or remedies at law or in equity.

C. Doctor expressly acknowledges that any breach or violation of any of the covenants made by Doctor in Section 16 shall cause immediate and irreparable injury to Sublessor. In the event of a breach or threatened or intended breach of this Agreement by Doctor, Sublessor, in addition to all other legal and equitable remedies available to it, shall upon the order of a court of competent jurisdiction be entitled to injunctions, both preliminary and temporary, and restraining orders, enjoining and restraining such breach or threatened or intended breach.

20. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

21.

## 22. SEVERABILITY

If any one or more of the provisions of this Agreement, or any agreement incorporated into this Agreement, is for any reason held invalid, illegal, or unenforceable by the highest court of the jurisdiction in which the Office is located, the remaining provisions of this or the incorporated agreements with respect to such jurisdiction shall continue unimpaired. The invalid, illegal or unenforceable provision shall be replaced by a mutually acceptable valid, legal and enforceable provision pertaining to such jurisdiction that shall be in writing and signed by each party.

## 23. WAIVER

The failure to enforce any provision of this Agreement is not a waiver of any such provision and shall not prevent a party from later enforcing such provision or any other provisions of this Agreement. The rights granted the parties are cumulative, and the election of one remedy is not a waiver of the party's right to assert all other legal and equitable remedies available under the circumstances.

## 24. ENFORCEABILITY; ATTORNEY FEES; STATUTE OF LIMITATIONS ON CLAIMS ARISING HEREUNDER

A.  If Sublessor or Doctor finds it necessary to enforce any part of this Agreement, Doctor and Sublessor agree that each party shall pay all of their own costs and attorneys' fees incurred for such purpose. The foregoing notwithstanding, Sublessor and Doctor agree that Sublessor shall be entitled to its costs and reasonable attorneys' fees, as determined by a Judge or arbitrator: (1) if Sublessor elects to enforce its rights under Section 16 of this Agreement, (2) if Sublessor elects to bring an arbitration or legal proceeding to recover any assets listed on Schedule A, or (3) if Sublessor elects to bring an arbitration, legal proceeding or collection activities to collect any past due monies, including but not limited to Rent, Facilities Contributions, or AccuExam Program Fee.

B.  The parties stipulate and agree that any claim (whether based on contract, tort, statute or equity) asserted by one party against the other shall be commenced not later than two years following the accrual of the cause of action giving rise to the claim, unless a shorter period of time is provided by governing statute. The parties agree that the failure to assert such a claim within the limitations period set forth in this paragraph shall be construed as a complete, voluntary, knowing waiver and relinquishment of such claim.

## 25. IMPOSSIBILITY

A.  If any of the following events occur, Sublessor or Doctor is excused from any obligations that are rendered impossible or reasonably impracticable for so long as such event continues: strikes; lockouts; labor disputes; acts of God; non-appealable government restrictions, regulations or control; judicial orders; enemy or hostile governmental action; civil commotion; fire or other casualty; and other causes beyond the reasonable control of the party obligated to perform.

B.  The events stated in paragraph A above do not excuse Doctor's obligations to pay Rent or Facilities Contribution or any other sums of money owed under this Agreement or excuse any obligations the Agreement otherwise imposes on Doctor to obey, remedy or avoid such event, provided the Rent or other obligations due Landlord under the Base Lease Agreement have not been suspended.

## 26. NOTICES

All notices, requests and demands under this Agreement shall be in writing. Notices shall be deemed to have been given upon delivery if delivered in person or mailed by an express delivery service, including, but not limited to second-day delivery (A notice so delivered shall be deemed given on the first date indicated on the receipt of the carrier that delivery has been made or unsuccessfully attempted to the address listed in the attached Schedule I), or via e-mail or facsimile transmission to the doctor at the locations listed in the

attached Schedule I.

## 27. ENTIRE AGREEMENT; SURVIVAL; RELEASE AND WAIVER OF REMEDIES

A. This Agreement, including any agreements incorporated in it by reference, supersedes all prior written or oral agreements and this agreement represents the entire understanding of Sublessor and Doctor and there are no other terms or conditions concerning the Offices. The parties acknowledge that they have entered into this agreement without reliance upon any representations or promises other than as expressly contained herein, and such reliance is specifically disclaimed. The parties agree that this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.

B. Any provision of this Agreement which imposes an obligation on either party after termination or expiration of this Agreement shall survive such termination and expiration.

C. This Agreement may be modified only upon written consent of both parties. Sublessor consent requires the signature of a Vice-President except for changes to Section 4 or Section 5 which may be modified by field operations supervisors for no longer than three (3) months' duration.

D. Any prior agreement between the parties is hereby terminated, and Doctor hereby releases Sublessor, and its respective parents, subsidiaries, affiliates, directors, assigns, officers, employees and agents, of and from any and all claims and causes of action, of any kind whatsoever, statutory, at common law or otherwise, arising out of or related to prior agreements or business relationships; Doctor agrees that neither it nor any of its shareholders will serve as a class representative or otherwise voluntarily participate in any class action litigation against Sublessor, its parent, subsidiaries, affiliates, employees, officers, directors, agents, assigns and successors in interest, and will not join with any other party in pursuing arbitration or litigation against Sublessor.

## 28. MISCELLANEOUS

Time is of the essence in this Agreement.

The captions in this Agreement are for convenience only and do not define or limit any of the terms.

This Agreement shall be governed by, and construed in accordance with, the laws of the State of Ohio.

The signers of this Agreement are authorized to bind the parties and the terms of this Agreement shall be binding on the parties hereto, their permitted assigns, successors, heirs, executors and administrators.

This Agreement may be executed in any number of counterparts and by facsimile transmission, each of which so executed shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

The Parties acknowledge and agree that a party's electronic signature shall be deemed an original signature for purposes of execution of this Agreement.

SUBLESSOR:
LUXOTTICA RETAIL NORTH AMERICA INC.

DOCTOR:
Lisa Greene, O.D.

By: _____
Senior Vice President, Retail Services
Luxottica Retail North America Inc.

Lisa Greene, O.D.

SCHEDULE A:



SCHEDULE A, CONTINUED

SCHEDULE B:

SCHEDULE C:



SCHEDULE E:

SCHEDULE F:



# SCHEDULE G: HIPAA PRIVACY

## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement (the "Agreement") is made effective on the earlier of: (a) the first date on which protected health information (as defined below) is disclosed to, or created or received by Sublessor, or (b) the effective date of the Agreement referenced below, between Doctor ("Covered Entity"), and Sublessor, as business associate (collectively, Covered Entity and Sublessor are referred to as the "Parties," or individually as a "Party").

### Background Information

A.  Sublessor and Covered Entity are the parties to a  Agreement.  (the "  Agreement")

B.  In connection with the  Agreement, Sublessor will have access to "protected health information" and "electronic protected health information" regarding Covered Entity's patients (collectively, "PHI"), as those terms are defined in the Health Insurance Portability and Accountability Act of 1996 (P.L. 104-191), 42 U.S.C. Section 1320d, et. seq., and regulations promulgated thereunder, as amended (such statute and regulations collectively, "HIPAA").  In addition, both parties are a "covered entity," as that term is defined under HIPAA.

C.  The Parties are entering into this Agreement to comply with HIPAA as it relates to the use and disclosure of PHI and related matters.

### Statement of Agreement

The Parties hereby acknowledge the accuracy of the foregoing Background Information and agree as follows:

1.  **Definitions.**  Any capitalized terms used but not otherwise defined in this Agreement shall have the respective meanings given those terms under HIPAA.

2.  **Term.**  The term of this Agreement shall begin on the effective date of this Agreement as described above, and shall end on the date on which the  Affiliation Agreement is terminated, subject to the provisions of Section 17 of this Agreement, which shall survive any expiration or termination of this Agreement.

3.  **HIPAA Compliance and Subcontractors.**  (a) During the term of this Agreement, to the extent Sublessor has access to, creates, receives, uses, or discloses PHI for or on behalf of Covered Entity , Sublessor shall comply with the requirements under HIPAA that are applicable to Business Associates.  Without limiting the foregoing, Sublessor may use or disclose PHI only if such use or disclosure is permitted by this Agreement, HIPAA or otherwise Required by Law.  (b) Sublessor shall ensure that each of its agents or subcontractors as defined in 45 C.F.R. § 160.103 ("Subcontractors") to whom it provides PHI received from, or created, used or disclosed by Sublessor for or on behalf of Covered Entity, shall enter into a written business associate agreement with Sublessor containing the same restrictions, terms and conditions as are applicable to Sublessor under this Agreement, including, without limitation, the requirement to implement administrative, physical and technical safeguards, including the safeguards described in the Security Standards for the Protection of Electronic Protected Health Information found at 45 C.F.R. part 164, subpart C (the "Security Standards") with respect to  Electronic PHI ("ePHI"), that reasonably and appropriately protect the confidentiality, integrity, and availability of any PHI that the Subcontractor creates, receives, maintains, or transmits on behalf of  Covered Entity or Sublessor, and to report any Security Incident or unauthorized use or disclosure of PHI, as more fully described in this Agreement.

4.  **Use and Disclosure; Rights.**  Sublessor may use or disclose the PHI disclosed to, received or created by it: (a) to perform functions, activities, or services for, or on behalf of, Covered Entity pursuant to the  Agreement, as it may be amended from time to time, or for other related purposes requested or approved by Covered Entity, including without limitation (i) audits, (ii) business reviews of the Doctor's practice, (iii) assistance in the preparation and mailing of patient appointment reminders or recall notices, (iv) assistance in scheduling patient appointments (as permitted by state law), (v) the preparation and mailing of marketing materials for Doctor, (vi) loss prevention reviews and services, and (vii) Contact Lens By Mail or  general contact lens ordering or fulfillment related services as may be requested by Doctor from time to time,  (b) to perform its obligations under this Agreement, (c) to properly manage and administer  Sublessor's business or carry out Sublessor's legal responsibilities, and (d) for 'data aggregation functions,' as defined by HIPAA, with respect to healthcare operations of Covered Entity, and (e) as otherwise expressly permitted by HIPAA or Required by Law.  Covered Entity shall not request that Sublessor use or disclose PHI in any manner that would not be permitted under HIPAA if done by Covered Entity as a Covered Entity.  If, pursuant to clause (c) of this section, Sublessor discloses PHI to others, Sublessor shall obtain reasonable written assurances from the recipient of the PHI that (i) such PHI shall be held confidentially and used or further disclosed only as Required by Law or for the purposes for which it was disclosed to such recipient by Sublessor, and (ii) that the recipient shall notify Sublessor of any instances of which it becomes aware that the confidentiality of the information has been breached.

5.  **HIPAA Security Rule; Safeguards.**  Sublessor shall implement, document, and use administrative, physical, and technical safeguards that prevent use or disclosure of PHI other than as permitted or required by this Agreement, and that reasonably and appropriately protect the confidentiality, integrity, and availability of any ePHI that it creates, receives, maintains, or transmits on behalf of Covered Entity, including, without limitation, reporting to  Covered Entity any Security Incident of which Sublessor becomes aware. Additionally, Sublessor shall comply with the provisions of the Security Standards with respect to all ePHI it creates, receives, uses, discloses, maintains or transmits for or on behalf of Covered Entity.  Sublessor shall implement and maintain reasonable and appropriate policies, procedures, training, documentation, monitoring and evaluation where applicable under the aforementioned Security Standards.

6.  **Minimum Necessary.**  Sublessor shall limit any use, disclosure, or request for use or disclosure to a "limited data set," as defined under HIPAA, to the extent practicable, or the minimum amount of PHI necessary to accomplish the intended purpose of the use, disclosure or request, in accordance with the requirements of HIPAA as amended from time to time.

7.  **HIPAA Privacy Rule; Covered Entity Access to Records.**  To the extent that Sublessor is responsible under the  Agreement or this Agreement to carry out obligations of Covered Entity under Subpart E of 45 C.F.R. Part 164 (the "Privacy Rule"), Sublessor shall comply with the requirements of the Privacy Rule that apply to Covered Entity in the performance of such obligations.  Sublessor shall maintain such records of PHI received from, or created or received on behalf of, Covered Entity and shall document subsequent uses and disclosures, other than as for treatment, payment, or healthcare operations, pursuant to a valid authorization, or otherwise excepted from the accounting requirement under HIPAA, made by Sublessor as may be deemed necessary and appropriate in the sole discretion of Covered Entity.  Sublessor shall grant Covered Entity reasonable access to examine and copy, at Covered Entity's expense, such PHI, and records and documents of Sublessor related thereto, during normal business hours.

8.  **DHHS Access to Books, Records, and Other Information.**  As required under the Privacy Rule, Sublessor shall make available to the Secretary of the U.S. Department of Health and Human Services ("DHHS") Sublessor's internal practices, books, and records relating to the use and disclosure of PHI received from, or created or received by Sublessor on behalf of Covered Entity, for purposes of determining compliance with HIPAA. Sublessor shall cooperate and assist Covered Entity in good faith with complying with the requirements of HIPAA and any investigation of Covered Entity regarding compliance with HIPAA conducted by DHHS, its Office for Civil Rights, or any other administrative or judicial body with jurisdiction over Covered Entity.

9.  **Designated Record Set.**  Sublessor shall comply with Covered Entity's requirements for maintaining a Designated Record Set, as defined by HIPAA, in connection with services performed under the Affiliation Agreement. Sublessor shall make an Individual's Designated Record Set available to Covered Entity for purposes of complying with such Individual's rights under HIPAA to access, copy or amend such record.

10. <u>Accounting</u>. Sublessor shall make available, within twenty (20) days following a written request from Covered Entity, any PHI or any other information in its possession reasonably required by Covered Entity to prepare, or reasonably assist Covered Entity in preparing, an accounting of disclosures in accordance with 45 C.F.R. § 164.528. Sublessor shall document disclosures of PHI in such a manner as will assist Covered Entity in responding to any request for an accounting of disclosures of PHI under said provision. With respect to written PHI, Sublessor shall have this information and documentation available for the six years preceding any request by Covered Entity. Notwithstanding the foregoing, if Sublessor has provided services to Covered Entity for less than the six-year period described herein, Sublessor shall be obligated to make available to Covered Entity only the information relating to the period during which Sublessor provided services to Covered Entity. In the event the provisions of the Privacy Rule relating to providing an Individual with an accounting of disclosures of PHI are amended during the term of this Agreement, Sublessor shall make available the above-referenced PHI and documentation reasonably required by Covered Entity to comply with such amended provisions as if such provisions were set forth herein in their entirety

11. <u>Access to and Amendment of PHI</u>. In accordance with an Individual's right to access or copy his or her own PHI under 45 C.F.R. § 164.524, and an Individual's right to append amendments to such PHI under 45 C.F.R. § 164.526, Sublessor shall make available all PHI maintained by Sublessor in a Designated Record Set to Covered Entity, or to the Individual to whom the information pertains, or to such Individual's Personal Representative, in any case within twenty (20) days following a written request by Covered Entity. For Designated Record Sets maintained electronically, such access or copies shall be made available in an electronic form or format if requested by the Individual. Sublessor shall append amendments to PHI in a Designated Record Set that Sublessor maintains, in accordance with a written request from Sublessor that includes the nature of the amendment to be appended, within the time period necessary to enable Covered Entity to timely comply with an Individual's request for amendment under 45 C.F.R. § 164.526.

12. <u>Individual Authorizations; Restrictions</u>. Covered Entity shall inform Sublessor of any restriction on the use or disclosure of PHI that Covered Entity has agreed to with an Individual, or that is otherwise required by HIPAA, or that Covered Entity has placed in its Notice of Privacy Practices, or of any changes in or revocation of an authorization or other permission by an Individual, to the extent that such restriction, change or revocation may affect Sublessor's use or disclosure of PHI. Covered Entity shall inform Sublessor of any change in or revocation of any restriction on the use or disclosure of PHI that Covered Entity had previously agreed to with an Individual, or that Covered Entity had placed in its Notice of Privacy Practices, or that is required under HIPAA.

13. <u>Material Breach of Agreement</u>.
    a)   <u>Termination of Business Associate</u>. Upon Covered Entity's knowledge of a material breach of this Agreement or a violation of HIPAA, including, without limitation, a Breach of Unsecured PHI, committed by any workforce member or Subcontractor of Sublessor, Covered Entity shall notify Sublessor in writing, and, as determined in Covered Entity's sole discretion, Covered Entity shall either:
        i.   terminate this Agreement and the Affiliation Agreement between Covered Entity and Sublessor, if Sublessor does not cure the breach or end the violation within thirty (30) days of receiving notice of the breach from Covered Entity; provided, however, all of the obligations imposed on Sublessor under this Agreement shall continue with respect to PHI for which return or destruction by Sublessor under Section 17 hereof is not feasible; or
        ii.   immediately terminate this Agreement and the Affiliation Agreement between Covered Entity and Sublessor, if Sublessor (or a Subcontractor of Sublessor) has breached a material term of this Agreement and cure is not feasible as determined by Covered Entity; provided however, all of the obligations imposed on Sublessor under this Agreement shall continue with respect to PHI for which return or destruction by Sublessor under Section 17 hereof is not feasible.
    b)   <u>Termination of Subcontractors</u>. Upon Sublessor's knowledge of a material breach of the Business Associate Agreement between Sublessor and a Subcontractor, or a violation of HIPAA by a Subcontractor, including, without limitation, a Breach of Unsecured PHI committed by a Subcontractor or its workforce member or Subcontractor, Sublessor shall notify Covered Entity of such occurrence, and either:
        i.   terminate Sublessor's agreement with such Subcontractor if the Subcontractor does not cure the breach or end the violation within thirty (30) days of receiving notice of the breach from Sublessor; or
        ii.   immediately terminate Sublessor's agreement with such agent or Subcontractor, if the Subcontractor has breached a material term of this Agreement, caused a Breach of Unsecured PHI or otherwise violated HIPAA, and cure is not feasible as determined by Sublessor, or as so directed by Covered Entity.

14. <u>Unauthorized Disclosure; Breach of Unsecured PHI</u>.
    a.   Sublessor shall report to Covered Entity any use or disclosure of PHI not authorized by this Agreement within twenty (20) business days after discovery of such unauthorized disclosure.
    b.   Without limiting the foregoing, Sublessor shall notify Covered Entity of any Breach or potential Breach of Unsecured PHI by Sublessor, any of its workforce members or Subcontractors, in accordance with 45 C.F.R. § 164.410, within twenty (20) business days after discovery by Sublessor of the Breach or potential Breach. The notice to Covered Entity shall include the date(s) of the Breach (or potential Breach) and nature of the violating use or disclosure, the type(s) and amount of PHI used or disclosed, the identity of the person(s) suspected of making the violating use or disclosure and to whom the PHI was disclosed, and the corrective actions Sublessor has or shall take (including any actions that Individuals should take) to mitigate and prevent further harm or loss, and any other information that Covered Entity is required to include in notifications to the affected Individuals required under 45 C.F.R. § 164.404(c) or that Covered Entity reasonably requests. Sublessor shall supplement its notice to Covered Entity upon discovery of additional relevant facts pertaining to the Breach.
    c.   For any unauthorized use or disclosure of PHI by Sublessor, its workforce members or Subcontractors that does not constitute a Breach of Unsecured PHI, Sublessor shall document, in a written breach analysis made available to Covered Entity upon request, Sublessor's risk assessment that includes the factors relied upon by Sublessor to determine that there is a low probability that the PHI was compromised, including, but not limited to, the factors listed under 45 C.F.R. § 164.402.
    d.   Sublessor shall fully cooperate in good faith with Covered Entity's investigation of any Breach or potential Breach of Unsecured PHI, and in any notifications to Individuals undertaken by Covered Entity. The Parties acknowledge that the ultimate determination of whether a potential Breach has compromised the privacy or security of an Individual's PHI, and authority for notifying Individuals of such Breach, lies solely with Covered Entity.

15. <u>Mitigation</u>. In addition to any other obligations or remedies applicable under this Agreement, Sublessor shall take any other reasonable and appropriate actions available to it to mitigate any detrimental effects of a violation of HIPAA, a Breach of Unsecured PHI, or a failure by Sublessor to comply with the terms and conditions of this Agreement.

16. <u>Electronic Standards, Code Sets</u>. If Sublessor conducts, in whole or in part, electronic transactions on behalf of Covered Entity of the type covered by HIPAA regulations, including Standards for Electronic Transactions and Electronic Code Sets, Sublessor shall comply, and shall require any of its agents or subcontractors to comply, with each applicable requirement of such regulations.

17. <u>Return of PHI</u>. At the end of the term of this Agreement, Sublessor shall return or destroy all PHI received from, or created or received by Sublessor on behalf of, Covered Entity that Sublessor maintains in any form and retain no copies of such information; provided that, if and to the extent Sublessor reasonably determines that such return or destruction is not feasible, including, without limitation, where retention is necessary for Sublessor to fulfill its legal responsibilities or as Required by Law, upon prior notice to and approval by Covered Entity (which approval shall not be unreasonably withheld) Sublessor shall not be required to return or destroy such PHI, but Sublessor shall extend the protections of this Agreement to such PHI and limit further uses and disclosures to those purposes that make the return or destruction of the PHI infeasible.

18. <u>Data Use Agreement</u>. If Sublessor is the recipient of a 'limited data set', as defined by HIPAA, or if Sublessor is engaged by Covered Entity to create a limited data set for purposes of Covered Entity's health care operations, this Agreement shall also be considered to be a 'data use agreement,' as defined by HIPAA, that establishes the permitted uses and disclosures of the information by Sublessor as a limited data set

recipient as required by HIPAA. To the extent that, and for as long as, it possesses limited data set information for or on behalf of Covered Entity, Sublessor hereby agrees to fully comply with the requirements of HIPAA with respect to limited data set information, including without limitation, 45 C.F.R. §164.514(e). The provisions of this Agreement relative to PHI shall also apply to limited data set information, if any, in the possession or control of Sublessor. Limited data set information may be used or disclosed by Sublessor only for the purposes of research, public health, or health care operations of Covered Entity. Sublessor may not disclose limited data set information in a manner that would violate HIPAA if Sublessor were a covered entity thereunder. Sublessor may only disclose limited data set information to and permit the use of such information by other persons as may be agreed upon between Covered Entity and Sublessor in writing from time to time. Sublessor shall not identify or attempt to identify the Individual(s) to whom the limited data set information pertains or contact or attempt to contact the Individual(s) that Sublessor believes to be the subject of any limited data set information.

19. **Sale of PHI.** Sublessor shall not directly or indirectly receive remuneration in exchange for any PHI of an Individual unless Covered Entity has approved of such activity in writing in advance of such disclosure or sale, and, when directed to do so by Covered Entity, Sublessor has obtained from the Individual a valid written authorization that includes a statement that PHI can be further exchanged for remuneration by the entity receiving PHI of the Individual, and all other requirements under applicable HIPAA regulations are met. The compensation of Sublessor for performance of its services under the Agreement shall not constitute remuneration from the sale of PHI for purposes of this Section.

20. **HIPAA Amendments.**
    a. In the event Congress or DHHS amend, supplement or otherwise modify the administrative simplification provisions of HIPAA, this Agreement shall be deemed automatically amended to incorporate any supplemental, amended or modified requirements as are expressly applicable to Covered Entity and/or Sublessor, effective on the effective date of such amendment(s).
    b. Without limiting the foregoing, the Parties agree to negotiate and cooperate in good faith in the execution of any amendments, agreements or other instruments deemed necessary or appropriate by the Parties in their reasonable discretion to carry out such HIPAA amendments, or to effectuate compliance with an applicable state or federal law respecting use, disclosure or security of any individual health information created, received, used or disclosed by Sublessor hereunder.

21. **Notices.** All notices and other communications in connection with this Agreement to any Party shall be deemed given when delivered personally, mailed by certified mail (return receipt requested) to that Party, at such other address for such Party as such Party shall have specified in a prior written notice to the other Parties, or delivered to Federal Express, United Parcel Service, or any similar express delivery service for next business day delivery to that Party at that address.

22. **Non-Waiver.** The failure by any Party to insist upon strict compliance with any term or provision of this Agreement, to exercise any option, to enforce any right, or to seek any remedy upon any default of any other Party shall not affect, or constitute a waiver of, any Party's right to insist upon such strict compliance, exercise that option, enforce that right, or seek that remedy with respect to that default or any prior, contemporaneous, or subsequent default. No custom or practice of the Parties at variance with any provision of this Agreement shall affect or constitute a waiver of, any Party's right to demand strict compliance with all provisions of this Agreement.

23. **Gender and Numbers; Headings.** Where permitted by the context, each pronoun used in this Agreement includes the same pronoun in other genders and numbers, and each noun used in this Agreement includes the same noun in other numbers. The headings of the various sections of this Agreement are not part of the context of this Agreement, are merely labels to assist in locating such sections, and shall be ignored in construing this Agreement.

24. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same Agreement.

25. **Amendment.** Except as expressly required with respect to HIPAA amendments described in Section 20 above, this Agreement may be amended only by written Agreement signed by Covered Entity and Sublessor.

26. **Binding Effect; Assignment or Delegation.** This Agreement shall be binding upon, inure to the benefit of and be enforceable by and against the Parties and their respective heirs, personal representatives, parents, subsidiaries, successors, and assigns.

27. **Severability.** With respect to any provision of this Agreement finally determined by a court of competent jurisdiction to be unenforceable, such court shall have jurisdiction to reform such provision so that it is enforceable to the maximum extent permitted by applicable law, and the Parties shall abide by such court's determination. In the event that any provision of this Agreement cannot be reformed, such provision shall be deemed to be severed from this Agreement, but every other provision of this Agreement shall remain in full force and effect.

28. **Survival.** All representations, covenants, and agreements in or under this Agreement or any other documents executed in connection with the transactions contemplated by this Agreement, shall survive the execution, delivery, and performance of this Agreement and such other documents. The respective rights and obligations of Sublessor under Section 17 of this Agreement shall survive termination or expiration of this Agreement.

29. **Further Assurances.** Each Party shall in good faith execute, acknowledge or verify, and deliver any and all documents which may from time to time be reasonably requested by the other Party to carry out the purpose and intent of this Agreement.

30. **No Third Party Beneficiaries.** This Agreement is intended for the exclusive benefit of Covered Entity and Sublessor and their respective successors and assigns, and nothing contained in this Agreement shall be construed as creating any rights or benefits in or to any third party, and shall not be enforceable by any third party.

31. **Governing Law; Interpretation.** This Agreement shall be interpreted and governed under the laws of the State of Ohio to effectuate compliance by Covered Entity with applicable provisions of the federal HIPAA standards. In addition, this Agreement shall continue to apply to the Affiliation Agreement as it may subsequently be amended or restated. In the event of any inconsistency between the provisions of the Agreement, as so amended and restated (if applicable), and this Agreement, the provisions of this Agreement, to the extent necessary to enable Covered Entity to comply with applicable provisions of HIPAA, shall control. This Agreement supersedes all prior agreements or understandings regarding the subject matter of this Agreement.

SCHEDULE H:

## SCHEDULE I: DECLARATIONS

"Doctor" is defined as Lisa Greene, O.D., whose current address is 1030 Redfield Drive, Clyde, NC 28721. "Doctor" will be defined collectively to mean Doctor and any professional corporation or other business entity which Doctor forms to operate the optometric practice(s) at the Location(s) identified below, unless Doctor requests in writing that Doctor's professional corporation or other business entity be the subleasing party and Doctor signs a Personal Guarantee, Schedule C.

Section 1.  A.          <u>Landlord</u>                    <u>Location /Address</u>
                        Crosland                          Biltmore Park Town Square
                                                          27 Schenck Park Way #140
                                                          Asheville, NC 28803

Section 2(B)1          The term of this Agreement begins on January 1, 2016 and extends until close of business December 31, 2020.

Section 4.

Section 5:

Section 26.    <u>NOTICES</u>

If to Sublessor:        Luxottica Retail North America Inc.
                        4000 Luxottica Place
                        Mason, OH 45040-8114
                        Attention:    Sublease Administration

If to Doctor:           Lisa Greene, O.D.    *111 Carolina Bluebird Loop*
                         1030 Redfield Drive    *Arden NC 28704*
                        Clyde, NC 28721
                        E-mail address:  lmgreene2020@gmail.com

Or

At Doctor's Office:     Biltmore Park Town Square
                        27 Schenck ~~Park Way~~ #140    *Parkway*
                        Asheville, NC 28803