# EXHIBIT "6"



City Centre Building • 301 College Street, Suite 400 • Asheville, NC 28801
Post Office Box 7647 • Asheville, NC 28802
T 828.252.6600 • F 828.258.6955

March 31, 2021

*Writer's Direct Dial no.: 828-210-6821*
*E-mail Address: SRussoKlein@roberts-stevens.com*

<u>*Via Email Only*</u>

Michael Mott
Associate General Counsel
Luxottica of America, Inc.
4000 Luxottica Place
Mason, OH 45040
mmott@luxotticaretail.com

   Re: Drs. Lisa Greene and ▮▮▮▮▮▮

Dear Mr. Mott:

This Firm represents Drs. Lisa Greene and ▮▮▮▮▮▮. Please direct any communications to Dr. Greene or ▮▮▮▮▮▮ to me. I am writing in response to your letters to both doctors dated March 11, 2021, in which you (1) allege that Dr. Greene and ▮▮▮▮▮▮ are in breach of Section 16(A)(4) of their respective Affiliation Agreements (respectively, the "Greene Agreement" and the ▮▮▮▮▮▮, and collectively, the "Agreements") by being "otherwise connected with" a future optometric practice or dispensing optical store; and (2) demand that <u>Dr. Greene</u> cease and desist for opening a competing optometric practice pursuant to Section 16(C)(1) of each of her Agreement.[1] Luxottica's position is incorrect:

- Neither ▮▮▮▮▮▮ nor Dr. Greene have breached any term of their Agreements, and specifically, are not in default of Section 16(A)(4) of the Agreements; and
- The non-competition sections of Dr. Greene's Agreement are void and unenforceable as a matter of public policy under North Carolina law.

**Neither Dr. Greene nor ▮▮▮▮▮▮ are in Breach of Section 16(A)(4) of the Agreements**

Section 16(A)(4) of the Agreements, states that, <u>during the term of the Agreements</u>:

---

[1]  You evidently acknowledge that the Asheville Vision and Wellness business located at 559 Long Shoals Road, Arden, NC is more than three miles from the LensCrafters location at 3 S. Tunnel Road, Asheville, where ▮▮ ▮▮ worked up until today and have correctly not attempted to claim a breach of Section 16(C)(1) against ▮▮.

> Doctor shall not directly or indirectly practice optometry, sell prescription eyewear including eyeglasses and contact lenses, or manage, operate, own, control, act as consult to or otherwise be connected with, or be employed by an optometric practice or dispensing optical store…

Asheville Vision and Wellness, the practice you reference, is not yet open, practicing, engaging in sales, or otherwise operating as of the date of this letter. The Agreements do not prohibit a doctor from "preparing to compete." While you do not clarify your emphasis of "otherwise be connected with" in your letter, I presume that you indicate that such preparation and ownership of a practice to be opened after the termination date of the Agreements is a default. The parties did not, however, contract to refrain from preparing to compete. "[M]erely making plans to compete with an employer before leaving the company, without more, does not necessarily constitute a breach…". See *Fletcher, Barnhardt & White, Inc. v. Matthews*, 100 N.C.App. 436, 441–42, 397 S.E.2d 81, 84 (1990) *RoundPoint Mortg. Co. v. Florez*, No. 13 CVS 8803, 2016 WL 687629, at *10 (N.C. Super. Feb. 18, 2016).

Drs. Greene and ▇▇▇▇ have not breached the terms of the Agreements. Accordingly, Section 16(C)(4) is not applicable.

**The Restrictive Covenant in Dr. Greene's Agreement is Void as a Matter of Public Policy**

The restrictive covenant of Dr. Greene's Agreement is unenforceable. North Carolina courts disfavor restrictive covenants; the public's interest in preserving a physician's ability to earn a living outweighs a business's protection from competition when the agreement merely exists to stifle normal competition. The restrictive covenant of the Greene Agreement does not merely purport to restrict Dr. Greene from offering the type of optometry services they provided under the Agreements, but any sort of optometry at all. Where restrictive covenants would prevent a party from doing even wholly unrelated work at any firm similar to that previously performed under contract, North Carolina courts will not enforce them. *VisionAIR Inc. v. James*, 167 N.C.App. 504 (2004).

Moreover, "North Carolina courts have held that restrictive covenants that reach beyond customers to also include potential customers with whom the promisor had no contact are unreasonable." *Hejl v. Hood, Hargett & Associates, Inc.,* 196 N.C.App. 289 (2009), cited by *Software Pricing Partners, LLC v. Geisman*, No. 319CV00195RJCDCK, 2020 WL 3249984, at *7 (W.D.N.C. June 16, 2020). The Agreement does not simply purport to prohibit Dr. Greene and Morse from competing against Luxottica, it prevents patients from the free choice of their physician guaranteed by N.C. Gen. Stat. § 90-127.1.

**Learned Profession Exemption**

North Carolina courts have repeatedly held that restrictive covenants are unenforceable where they deny the public access to needed medical care under the learned profession exemption. *Aesthetic Facial & Ocular Plastic Surgery Center v. Zaldivar*, 826 S.E.2d 723 (N.C. Ct. App.

2019). Dr. Greene is the sole practitioner of wellness vision care in Western North Carolina. Her practice includes specialized equipment to detect macular degeneration, glaucoma, and dry eye that is not provided by any other optometrist in the Asheville area, including the EvokeEX and RETeval machines to measure response time for retina and optic nerves to detect eye disease early, AdaptDX to detect early macular degeneration, and LipiScan and LipiFlow to image and treat dry eye syndrome. These are serious eye conditions with substantial impact on patients' health, and preventing access to Dr. Greene's services would create actual harm to these patients. As the sole specialist in this area, the non-competition provisions of Section 16(A)(4) of the Agreements are unenforceable against Dr. Greene.

Where restrictive covenants prohibit a specialist from competing against another business, North Carolina courts have held the restrictive covenants unenforceable because the harm to public health outweighs contract interests. The court considered such factors as the shortage of specialists in the field in the restricted area, the impact of establishing a monopoly in the area, including the impact on fees in the future and the availability of a doctor at all times for emergencies, and the public interest in having a choice in the selection of a physician in finding the restrictive covenant unenforceable. *Zaldivar* at 727.

Dr. Greene is the sole provider of the specialized equipment and care in the greater Asheville area, if not Western North Carolina. The closest providers of wellness vision care equipment comparable to Dr. Greene's are located in Charlotte, Greenville, S.C., or Knoxville, TN. As a learned professional, the restrictive covenant of the Affiliation Agreement is unenforceable as to her.

Drs. Greene and ▮▮▮▮▮ properly and timely notified Luxottica of their intent to terminate their respective Agreements. Neither breached their Agreement. Their practice of optometry, and in particular Dr. Greene's specialized practice of wellness vision, are protected under North Carolina law.

In accordance with state statute and regulations of the NC State Board of Optometry, Dr. Greene and ▮▮▮▮▮▮▮▮ are required to notify their patients that they are leaving their current practice locations and will be taking their patient records to their new practice location. Now that their respective sublease agreements are terminated, they will provide the required notice to their patients.

/ /

If you have any questions, please let me know.

                                      Sincerely,

                                      ROBERTS & STEVENS, P.A.

                                      Susan Russo Klein

SRK/cb

cc: Wyatt Stevens, Roberts & Stevens, P.A.